```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON
```

ANJANETTA MACKEY, individually, )
as administrator of the estate  )
of Clifford James Mackey,       )   Civil Action No. 5:05-401-JMH
and as mother and next friend   )
of Marquis Clifford James       )
Mackey, an infant,              )
                                )
     Plaintiff,                 )   **MEMORANDUM OPINION & ORDER**
                                )
v.                              )
                                )
UNITED STATES OF AMERICA,       )
                                )
     Defendant.                 )

                     **      **      **      **      **

This matter is before the Court on Defendant's motion to dismiss, or in the alternative, motion for summary judgment [Record No. 8]. Plaintiff responded to this motion [Record No. 12], to which Defendant replied [Record No. 15]. Also pending before the Court is Plaintiff's motion for leave to file a sur-response in opposition to Defendant's dispositive motion [Record No. 16]. Defendant filed a response to this motion [Record No. 17], to which Plaintiff replied [Record No. 18]. The Court being sufficiently advised, this matter is ripe for review.

### I. BACKGROUND

Plaintiff AnJanetta Mackey filed the instant complaint against the United States claiming negligence. Plaintiff's deceased husband, Clifford James Mackey ("Mackey"), was employed by the United States Postal Service ("USPS"). Glenn Richardson and Tracy Gross were also USPS employees. On January 12, 2004, Richardson

informed Gross that he planned to harm Mackey. Gross did not tell Mackey about Richardson's statement. Tragically, Richardson killed Mackey at Mackey's residence that same day. Plaintiff alleges that pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, Defendant is liable to Plaintiff for negligently failing to warn her husband that Richardson planned to harm him.

In her complaint, Plaintiff states that the USPS created a "zero tolerance" policy towards violence, and pursuant to that policy, employees were required to take affirmative steps when they became aware of threats of violence directed at an employee by another employee. Plaintiff contends that, once notified of such threats, USPS employees were required under the "zero tolerance" policy to inform the employee in danger. According to Plaintiff, when USPS employee Gross did not warn Mackey after learning of Richardson's intent to harm him, Defendant, through Gross, breached the duty created by the "zero tolerance" policy. Plaintiff also claims that the employer-employee relationship is a "special relationship," and when Defendant, through Gross, received notice of Richardson's intent to harm Mackey, Defendant had a duty, as a matter of Kentucky law, to inform Mackey of Richardson's statement.

Defendant has moved the Court to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, to grant it summary judgment. The Court will not consider the affidavit

attached to Defendant's motion and will treat the motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir. 1998).

## II. STANDARD OF REVIEW

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When a defendant presents a facial attack, it is a "challenge to the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In deciding such a motion, the court must "take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).

## III. DISCUSSION

*A. Motion to Dismiss for Lack of Subject Matter Jurisdiction*

The United States may only be sued if it waives its sovereign immunity. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990). The Federal Tort Claims Act ("FTCA") includes a waiver of the government's immunity for complaints of injuries

3

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Several exceptions to this waiver of sovereign immunity are specified in the FTCA, including an exception that precludes liability for any claim arising out of an assault or battery. 28 U.S.C. § 2680(h). The FTCA specifies that its "broad grant of jurisdiction 'shall not apply to . . . [a]ny claim arising out of assault, battery' or other specified intentional torts." *Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 2680(h)). In its motion to dismiss, Defendant argues that Plaintiff's claim of negligence for Gross's failure to warn Mackey of Richardson's intent to harm him falls within this exception.

In *Sheridan*, the Supreme Court explained that the import of the words "arising out of assault [or] battery" is less clear "when they are applied to a claim arising out of two tortious acts, one of which is an assault or battery and the other of which is a mere act of negligence." *Id.* The plaintiffs in *Sheridan* sued the United States after the car they were riding in was fired on by an inebriated off-duty serviceman. Before the shooting incident took place, three navy corpsmen saw the serviceman in a drunken stupor and tried to take him to the emergency room. *Id.* at 395. The serviceman refused and grabbed at his bag, revealing his rifle;

4

thereafter, the corpsmen fled and never alerted the authorities that the serviceman was armed and intoxicated. *Id.* The Supreme Court, proceeding under the assumption that the plaintiffs' version of the facts would support recovery under Maryland law, held that although the tortious actions of the off-duty serviceman not acting within the course and scope of his employment does not in itself give rise to liability, "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status." *Id.* at 401.

Courts interpreting *Sheridan* have developed what has become known as the "independent affirmative duty" doctrine. *See LaFrancis v. United States*, 66 F. Supp. 2d 335, 339 (D. Conn. 1999). The Fifth Circuit summarized the doctrine by explaining that "*Sheridan* stands for the principle that negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999).

In this case, Plaintiff is not claiming that Defendant is liable for Richardson's battery of Mackey. Furthermore, Plaintiff is not alleging that Defendant is liable for negligently supervising or hiring Richardson. This is a case in which

5

Plaintiff is attempting to bring a claim under the "independent affirmative duty" doctrine by alleging that Defendant had a duty to warn Plaintiff of Richardson's threats. Under *Sheridan* and its progeny, Plaintiff must allege a basis for government liability that is "entirely independent" of Richardson's status as a USPS employee. *Sheridan*, 487 U.S. at 401.

To survive Defendant's motion to dismiss, Plaintiff must show that Defendant's negligence in failing to warn Mackey about Richardson's statements represents the breach of an "antecedent duty unrelated to the employment relationship" between Richardson and Defendant and that her version of the facts would support recovery under Kentucky law. *Leleux*, 178 F.3d at 757. Whether Plaintiff has met this burden depends upon whether Kentucky law recognizes that the "zero tolerance" policy created a duty or that the employer/employee relationship is a special relationship that burdens the employer with a duty to warn employees of threats by third parties.

*i. Did Defendant Assume a Duty to Warn Its Employees of Threats by Third Parties By Promulgating Its "Zero Tolerance" Policy?*

Under Kentucky law, a negligence action requires (1) a recognized duty owed by defendant to plaintiff, (2) a breach of that duty, and (3) consequent injury. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). The issue of whether a duty exists is a question of law, and the Court, when deciding this

6

issue, engages in a policy determination.  *Id.* at 248.

"[O]ne who volunteers to act, though under no duty to do so, is charged with the duty of acting with due care."  *Sheehan v. United Servs. Auto. Ass'n*, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996) (citing *Estep v. B.F. Saul Real Estate Inv. Trust*, 843 S.W.2d 911, 914 (Ky. Ct. App. 1992)).  The standard for determining if a duty has been assumed "is whether the putative tortfeasor has actually and specifically undertaken to render the services allegedly performed without reasonable care."  *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 847 (Ky. 2005).

As described by Plaintiff's complaint, Defendant's "zero tolerance" policy required it to inform employees of threats by other employees.  The "zero tolerance" policy, required "[USPS] employees, especially managers and/or supervisors, to take affirmative steps when becoming aware of violence directed at an employee by another employee or aware of threatened violence directed at an employee by another employee."  (Am. Compl. ¶ 10). If the "zero tolerance" policy required Defendant to warn Mackey of only co-employee threats, then the alleged duty to warn is not "entirely independent" of Richardson's employment relationship with Defendant, and the assault and battery exception applies. *Sheridan*, 487 U.S. at 401.  The United States, therefore, has not waived sovereign immunity for Plaintiff's negligence claim, and the Court is without subject matter jurisdiction to proceed.

7

Even if Plaintiff claimed in her complaint that the policy required Defendant to warn its employees of a threat made by *any* third party, Plaintiff still has not shown that Kentucky law would support her theory of recovery.  Under Kentucky law, simply promulgating a policy does not create a duty of care.  An employer's internal policies or rules do not in and of themselves create an independent duty owed by the employer.  *See Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967) (finding that a railroad's safety and work rules that required employees to stop their cars if necessary when approaching crossings did not "set the standard of care"); *see also  Merrill v. Arch Coal, Inc.*, 118 Fed. Appx. 37, 44 (6th Cir. 2004) (agreeing with the district court's conclusion that a corporation's safety program, safety awards, and general safety guidelines "are insufficient to create a duty on [the corporation's] part" but holding that evidence of "a more specific undertaking," including inspecting a coal mine's roof problems, offering advice about roof control, and telling the mine manager that the mine's roof was adequate, could lead to the conclusion that defendant assumed a duty to advise); *Murphy v. Second St. Corp.*, 48 S.W.3d 571, 574-75 & n.16 (Ky. Ct. App. 2001) (holding that business owner defendant's fulfillment of a duty to protect patron plaintiff from foreseeable injury did not lead to defendant's assumption of a duty to gather information about assailant even though defendant's corporate policies call for its

8

employees to complete an incident report after an assault). As her argument rests exclusively upon Defendant's adoption of the "zero tolerance" policy, Plaintiff has failed to show how Defendant actually and specifically undertook a duty to warn Mackey of Richardson's threats.

    *ii. Does Kentucky Law Consider the Employer/Employee Relationship a Special Relationship That Gives Rise to a Duty to Warn of Threats by Third Parties?*

"It is well settled in Kentucky jurisprudence that there is no legal duty to report the commission of a crime by another, let alone the possibility of a crime being committed by another." *James v. Wilson*, 95 S.W.3d 875, 889 (Ky. Ct. App. 2002). Plaintiff asserts that Kentucky law recognizes a special relationship between an employer and an employee that requires employers to warn employees of the existence of any threats against them. Plaintiff fails to cite, and the Court has not found, any Kentucky cases specifically recognizing that a special relationship between an employer and an employee gives rise to a duty to warn of threats by third parties. Only dicta seems to imply that such a relationship can exist.[1]

---

    [1] Although the court in *James* specifically notes how the comments to Section 314A of the Restatement (Second) of Torts mention that the employer/employee relationship gives rise to a duty of protection similar to that of, for example, a common carrier and its passenger, that sentence is the extent of the discussion. In *James*, the court analyzed whether a special relationship existed between an attacker and his fellow students and did not discuss an employer/employee relationship. *See id.* at 889-90.

The *James* court noted the exception to the general rule found in Section 314A of the Restatement (Second) of Torts, which lists several special relationships that give rise to a duty to aid or protect.[2] The comments to Section 314A note that the employer/employee relationship gives rise to a similar duty and refer to Section 314B. That particular section has never been cited by a Kentucky court. Moreover, Section 314B discusses a duty to inform an employee as to harm that occurs within the scope of employment.[3] Plaintiff's complaint states that Mackey was harmed at his home, not at his workplace or while he was in the course and scope of his employment with Defendant. Based on the Court's review of Kentucky law, even though Mackey was employed by Defendant, Defendant did not owe Mackey a duty to warn him of Richardson's statements. Although Kentucky law recognizes that an employer has a duty to provide a safe place to work, that duty does not extend to warning an employee of threats or hazards outside the scope of employment. *See* KRS § 338.031 (West 2005); *Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson*, 488 S.W.2d 355, 357-58

---

[2] Section 314A lists the following special relationships: (1) a common carrier and a passenger, (2) an innkeeper and a guest, (3) a possessor of land and an invitee, and (4) a custodian and a ward. Restatement (Second) of Torts § 314A (1965).

[3] *See also* Restatement (Third) of Torts § 40 cmt. k (Proposed Final Draft No. 1, 2005) (noting, for example, that the "circumstances in which this duty [of employers] might apply are largely limited to a criminal attack on an employee by a third party that occurs at the place of employment").

(Ky. 1972). In the absence of a basis under Kentucky law for finding that Defendant voluntarily assumed a duty or owed a duty to Mackey based on a special relationship, the Court lacks subject matter jurisdiction to hear Plaintiff's claim of negligence.

B. *Motion for Leave to File a Sur-Response*

Plaintiff requests leave to file a sur-response because Defendant (1) cited cases in its reply that it did not refer to in its memorandum supporting its motion and (2) addressed whether Kentucky tort law recognizes that an employer/employee relationship is a special relationship in its reply, instead of in its memorandum supporting its motion. In its memorandum, Defendant argued that Plaintiff's negligence claim falls within the assault and battery exception in § 2680(h). Plaintiff responded by arguing that her claim was not subject to the exception because Defendant owed Mackey an independent duty to warn based on Kentucky law. Thereafter, Defendant argued that Kentucky negligence law does not recognize a duty based on the facts alleged by Plaintiff. The Court finds no impropriety in Defendant responding in its reply to the arguments raised in Plaintiff's response; thus, Plaintiff's motion for leave to file a sur-response will be denied.

### IV. CONCLUSION

Accordingly, and based on the foregoing reasons, **IT IS ORDERED**,

(1) That Plaintiff's motion for leave to file a sur-response

[Record No. 16] be, and the same hereby is, **DENIED**;

    (2) That Defendant's motion to dismiss [Record No. 8] be, and the same hereby is, **GRANTED**;

    (3) That Plaintiff's claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE.**

    This the 24th day of July, 2006.



Signed By:
*Joseph M. Hood*
**United States District Judge**